ACCORDION Please take your seats. Good morning, Steve, good morning. Please proceed. Good morning, your honors. May it please the court. The question before you today is whether the foundation's clothing design mark, an elaborate habit consisting of a hooded scapular with a full-length, two-toned sword cross design in the front, a shoulder cape worn over a tunic with a chain-link belt, and a rosary bearing a cross, is inherently distinctive for the services of public promotion of healthy and religious family life. Our appeal today is limited to the services. We're not appealing on the issue of the clothing in class 25. Now, there are three reasons why the board erred in this case and why its decision should be reversed. The first is that there is no evidence whatsoever to support the board's conclusion that the foundation's clothing design lacked inherent distinctiveness. The second reason is that the board filled that gap where the evidence should have been with improper judicial notice, its own observations that referred piecemeal to some elements of the clothing design. And the third reason is that the board improperly considered evidence regarding former opposer Claudius, who withdrew from the opposition rather than have his deposition taken. That evidence never should have been considered. I'll turn first to the issue of no substantial evidence. What do you mean considered? I didn't see that the information sourced to the discontinued party was relied on for anything material to any part of the decision by the board. As far as we can tell, that's correct, Your Honor. Well, then what does it matter whether it was improper? If it had no impact on the decision, even if its citation was error, why wouldn't that be harmless error? There were not grounds to reverse. As far as the decision of inherent distinctiveness, Your Honor, which is our main point, we would agree with you. But we, unfortunately, from the record cannot tell what role that information regarding Claudius played in that decision. But the burden is on you to be able to tell, to be able to show that it tainted the decision. I would agree with Your Honor there. But you're admitting you can't do it. I'm admitting I cannot do that. Yes, Your Honor. So one of the problems I have with not only that evidence, but also the evidence regarding Mr. Stephen Schmider, is that there's not a whole lot of help in terms of what that evidence would have, or was, or would have given us that is pertinent to the inquiry that we are looking at here. What was the Claudius evidence that questions its distinctiveness? Your Honor, I would submit that I, too, searched the record in vain for information on inherent distinctiveness. It was the court's own reference to that information as lending what it considered confidence. Claudius doesn't say anything about distinctiveness one way or another, I take it. I agree with Your Honor, yes. Not only is it not clear that the board relied on Claudius, they couldn't have found anything in Claudius even if they wanted to. With regard to inherent distinctiveness. Yes, Your Honor. So coming back to the issue. Could they have found anything with respect to acquired distinctiveness? I'm sorry? Could they have found anything in his testimony with respect to the acquired distinctiveness issue? I do not believe so, Your Honor. I just don't believe that the evidence that related to Claudius would have related to that point. What, again, is the central error the board made? That there was no substantial evidence supporting its decision of lack of inherent distinctiveness. Under the Seabrook factors, Your Honor, it's necessary for the reviewing for the tribunal to decide assessing the design against what else is out there in the field. What it all boils down to is they're trying to see whether this design stands out in the crowd. And for example, in Seabrook itself, the opposer produced evidence of what third party designs were either registered or actually in use. Here in this case, opposer provided no such evidence. There's no evidence of what the crowd is, so we can't tell whether the habit design stands out from it. I thought the board referred to all sorts of materials that were before it for various different habits. And it made some comparison noting some of those differences. Respectfully, Your Honor, I would suggest that the information that it said was before it was simply an act of judicial notice. There was no evidence in the record regarding what other habits are out in the field. I thought there were photographs of various religious events in which religious people wearing different habits were all depicted. And therefore, you could make comparisons between the habit at issue in this case and some other roughly similar. That would be true, Your Honor, if there were more than one particular habit depicted. I believe that the photographs Your Honor is referring to are two photographs of a number of habits being worn, which were the habits of our client and its clothing design and one individual appearing in two different photographs with the same religious ceremonial costume. So no, Your Honor. We would say that there is no other evidence, no evidence that supported the board's decision that, for example, it is common and prosaic, conventional, that other people wear habits. There was no comparison. Why isn't it appropriate to take judicial notice of that even if there's no evidence in the record? The federal rules of evidence, which are adopted here, provide that you can take judicial notice of something generally known within the territorial jurisdiction of the trial court. Doesn't everybody know that habits are worn and that crosses appear on habits? I mean, you really dispute that that's the case? Well, we would say, Your Honor, that. Do you dispute that that's the case? Well, saying that habits are worn is like saying that clothing is worn. It's a circular argument. With crosses on it, right? Yes, with crosses on it. Does everybody know that? No? I would say, Your Honor, that it is not a generally known fact within the territorial jurisdiction. Do you dispute that it's true? I dispute that it is a fact of which judicial notice should probably be. You dispute that it's true. Do I dispute that it's true? It may be true, Your Honor. There's no evidence of it in the record. You wouldn't really treasure a remand to determine whether it's true or not. I would say, Your Honor, that there's no need for a remand. No, I know. You want to win outright. But I mean, one of the tests for judicial notice is, does the party that's opposing judicial notice really value getting a remand so that he can defeat the argument that the evidence in question is known throughout the jurisdiction? And the answer to Judge Dyke's question has to be, of course, habits are worn. And it's widely understood that that's the case. But your argument, it seems to me, has to be, and I understand at least in part it is, that the fact that habits are worn doesn't mean that this particular habit was widely worn. And I was heading in that direction. I mean, cars are driven on the street. That doesn't mean a Corvette isn't a distinctive car. Indeed, Your Honor. That's where I was heading. Because a habit, because ceremonial clothing has a cross on it, doesn't necessarily mean that ceremonial clothing that has a two-tone, full-length, sword-cross design on it wouldn't be distinctive. Inherently distinctive. Wouldn't be inherently distinctive. Wouldn't stand out from the crowd, Your Honor. The crowd of habits. The crowd of habits. That is correct. So in essence, because there was no evidence of what this crowd looked like, whether or not judicial notice is taken, it was not possible for the board to assess whether the foundations have design stood out from that crowd. And they compounded the error, Your Honors, by mischaracterizing the burden here. First, the board noted correctly that it is the opposer's burden to prove a lack of inherent distinctiveness. But after analyzing all of the Seabrook evidence, the board concluded that applicant had failed to present evidence that the habit is inherently distinctive. The board had the standard precisely backwards. So what would happen if you got the mark registered? Does that mean you'd be able to go and enjoin the heralds from conducting services wearing this habit? We would be able to conduct others from, we would be able to enjoin others from conducting services related to our services, wearing a habit that is confusingly similar to our services. Yes, Your Honor. That answer is what troubles me. I mean, isn't there a First Amendment problem with doing that, with saying to somebody, you can't conduct a religious service using a particular symbol? Well, our services are public promotion of healthy and religious life. Suppose it's a private service. Suppose it's for the members of the herald. Suppose it's a private service for the herald. Can you enjoin that? Well, we would say, Your Honor, that we're not talking about a use that's an interstate commerce trademark type use. Now, that issue is not before us because we're not on the issue of infringements, not before this tribunal. It's the issue of registrability. But we would say that there are, and frankly, Your Honor, the issue that Mary Queen says that it is using its habit for is signifying a person of contemplative and religious life. And we would say that that's not a trademark use. So have I answered your question? I hope that I have. Why don't you go on. OK. At any rate, coming back to the judicial notice issue, while the rather than acknowledge that there was a lack of evidence of record, the board substituted its own observations and implicitly took notice of them. But those observations did not relate to the foundation's clothing design as a whole, but piecemeal as to a few individual elements of that clothing. The board picked apart the foundation's habit design in order to conclude that it was not inherently distinctive. And even the conclusions that the board drew from its observations were flawed. It concluded that religious people wear habits, as Judge Bryson correctly pointed out. And from this, the board found that the foundation's habit is just like any other habit. That's wrong because we don't know what other habits look like. There is no evidence, even from the board's judicial notice. And there was no comparison of the foundation's habit in its entirety to any of these existing designs because there were no. What's the remedy that you want from us? We want you to reverse, Your Honor. And order what? That the habit design of the foundation is inherently distinctive and therefore registrable. Well, there's a gap, right, that would have to be filled. Even if you win on distinctiveness, there are more issues that the TTAB would have to address on remand. Well, there are two issues that could be addressed. That it hasn't decided. I'm sorry, Your Honor? That it hasn't decided. That it hasn't decided. So we would not be ordering that it's registrable, right? We would simply be sending it back to the TTAB for the TTAB to conduct further proceedings that might or might not result in determination that it's registrable. That could be one procedure that the court could do. Is there any other solution available? Well, Your Honor, it's our position that by stating that the appellee, Mary Queen, is not making trademark use of its design, that there really is no issue of ownership or likelihood of confusion, which are the remaining issues before the Trademark Trial and Appeal Board. Now, that could be an issue for the board to decide, and probably not this court, because this court doesn't make findings of fact. Well, that was the point. Well, I've raced through all of my issues, Your Honor. Let me ask you briefly, if I could. This is an issue that perhaps we should wait until it's raised, if it's raised. But I wanted to make sure that we got it in. As Mr. Schmieder's deposition, my reading of the board's order was that the board read its rule dealing with absent deponents as giving it jurisdiction, giving it authority to reject the deposition of an absent person unless there were exceptional circumstances shown for why it should be admitted, as opposed to the way the federal rule applies, which is to say that it's admissible as long as it's shown that the person was indeed absent and unavailable, and the unavailability was not procured by the proponent of the evidence. I would agree that it could be read that way. I wouldn't say that it necessarily was read that way. I would say that the board was exercising its discretion under the rule to keep that evidence out because it felt that Mary Queen hadn't met the standard of making the showing that it had to show to meet the exception for having its own party's discovery deposition. The showing being the showing that it had not procured the deponent's absence? That the person was truly absent from the jurisdiction. I didn't read. I mean, even read liberally, it seems to me that's a stretch to read the board's decision as saying we find that Mary Queen procured, or at least didn't prove that it didn't procure the absence of the deponent. Oh, I would agree with you, Your Honor. There was no finding that Mary Queen procured the absence. Or even a finding that Mary Queen didn't. And nor would we argue that. Well, then, if that's true, in the federal system, and the TTAB follows the federal rules except where otherwise To the extent that its own rules don't. But under the federal rules, once you show that the person is absent and you didn't procure their absence, that deposition is admissible. It's the gates open and the free pass. And the question is, is the board doing something different? And if not, where does it suggest that it's following the federal rule? Because I didn't see that. It seemed to me that it was applying a different principle, one that gives it a lot more discretion than a district court would have. Well, the principle that's being applied there is not so much principle but rule, that this exception is only granted upon motion to the board. And that's where the discretion comes in. But weren't they saying that because it was a 30B-6 that they weren't going to allow? That was one of the reasons. Yes, Your Honor. One of the other reasons was that. That wouldn't be true in the federal system either, right? I would agree with Your Honor, yes. Now, you maintained earlier that we can only conclude from the board's language and its opinion that they placed the burden of persuasion and production wrongly on you. That's correct, Your Honor. Now, I'm having a little trouble figuring out how that would be so. Isn't the quote you gave us from the board amenable to the interpretation that they found that a burden of production had fallen on you because of a threshold showing by the other side? That would be correct, Your Honor, if what we were talking about was acquired distinctiveness. But that's not the proper way that the burden falls, I respectfully submit, in connection with inherent distinctiveness. And the way that you- No burden on you to support a finding of this inherent distinctiveness? No, Your Honor. What happens is, in the examination process, under Trademark Law 35 U.S.C. 1052A through E, those are all subjects under which a trademark registration shall be granted unless. And so those are all things that cannot be granted. As long as you have jumped over those hurdles before the examining attorney, you're entitled to your registration. To F, the subject of acquired distinctiveness is, in essence, an affirmative defense. I can't follow your answer. You're saying inherent distinctiveness is automatically present if you file an application? Well, yes, Your Honor, unless the trademark office finds it differently. And here, this application was before an examining attorney of the U.S. Patent and Trademark Office. If it was found that the mark was registrable at that step, and the mark is then published for opposition, it is then the opposer's burden to come forward with evidence that the trademark examining attorney got it wrong. But suppose we consider that it's not necessarily that they came forward with the evidence, but that there's judicial notice that it is common to wear habits with crosses on them. Let's just suppose that that's established. And what you're saying is, well, they have to go an additional step and show that those habits are similar to the habit involved here. I take it it's so that it's not inherently distinctive. But I'm wondering whether that's the appropriate way of looking at it. Why not say, OK, they brought in evidence that habits with crosses are very common, and then maybe the burden shifts to you to show that the habit here is inherently distinctive from those other habits? Why shouldn't that be the approach? That could very well be the approach, Your Honor. But the problem that we had here was that no such evidence was given. This is an important point, it seems to me. I wouldn't blow right by this point, if I were you, in saying that it may very well be the case. Because then you are stuck with the problem of judicial notice. Judge Dyke's question, I think, is going to the problem of how far the opposer's burden of introducing prima facie evidence goes. If the opposer satisfies its burden, either by introduction of affirmative evidence or by admissible judicial notice of showing that habits are common, and that then imposes on you the burden of showing that your particular habits are very different from the habit in general, and commonly known habits, then it seems to me you have a problem. No, sir, Your Honor. Respectfully, I disagree. And the reason that I disagree is that there was witness testimony by several witnesses who said that they had never seen another habit, anything like the foundation's habit. That was testimony that's in the record and some of which is in the appendix. So we would submit that we had met that burden. But that testimony is, how far did it go? Is that in the appendix that we have? Yes, it is, Your Honor. Where's an example? Let me see if I can find that for you. I believe it would have been in the depositions of Collins and Balin. Balin starts at 801, Collins at 501. I can find the exact pages if Your Honor would like. Page 506, lines 8 through 11. But that doesn't really address how distinctive this is compared to other habits, does it? The question was not posed in the form of, does this stand out in the crowd? No, but it does form the question of, is there anything else out there in the field that's like this?   have any other questions. Other witness testimony besides this one? You said there was another one. Well, then it's the same question and answer colloquy on page 807, lines 11 through 14. I think I'm a little bit confused. I thought that earlier you said, the burden was wrongly placed on me. And therefore, I'm entitled to a reversal. But now you seem to be saying, well, if any burden was placed on me, my witnesses carried it. So if the latter is the case, how is there any harm? Well, that was not an issue that we raised on appeal, Your Honor. The point was that if we stand here before the trial court, and the evidence is all submitted, before we go forward at all, we could rest putting on no evidence. And it would have been Mary Queen's burden to come forward as just Bryson posited, with either its own evidence of a lack of inherent distinctiveness, or something to indicate that there was a lack of inherent distinctiveness. How were you hurt? I'm trying to understand how you were hurt. Were you any burden in position, or burden shifting, or burden definition, or burden anything? We're hurt, Your Honor, because there was no evidence on which the board could base a conclusion that the garment before it lacked inherent distinctiveness for the services. That's how we're hurt. Well, but if we say it was appropriate to take judicial notice that habits with crosses are common, and we say that that satisfied the initial burden to show a lack of inherent distinctiveness, that the burden then shifted to you to show that those comparing the habit involved here with those other habits, the burden shifted to you to show that that comparison showed inherent distinctiveness. Then the question is whether you met that burden with this testimony that we've just been looking at. Well, I would think that's the context of the question. I would respectfully state that you skipped the step of ensuring that these habits, or whatever was taken judicial notice of, were sufficiently similar, or our habit stood out from a crowd from that. Once that decision was made, yes, the burden would shift. Well, let me make sure that I've got your position, because this goes back to Judge Dyke's original question, and I think it's an important question. Let me make sure I understand where you are. The way Judge Dyke put the question was, let's assume for the present that judicial notices can be taken of the fact that people wear habits. Now, the question is, is that sufficient to satisfy the prima facie, the opposer's burden of introducing prima facie evidence of lack of inherent distinctiveness, such that it shifts to you the burden of showing that, in fact, your particular habit is different from all the other habits? Now, do you have any legal authority for the proposition that that is either right or wrong, as a matter of the way we should be analyzing the question of shifting a burden? My understanding from this court's own precedent in the Yamaha case, as it explained it to the board there, was that at this stage, in other words, to be talking about prima facie burden would be appropriate if we were talking about a case on social summary judgment, or a case which we can't have at the board of a verdict at the close of the plaintiff's case. But here, where we're at the conclusion of trial after the trial testimony period's ended, really we're talking about the ultimate burden of going forward with evidence. So it's the ultimate burden, as this court explained in Yamaha, that the opposer must meet. I don't understand what the deficiency is. If I understand what you're saying, is you're saying because the court used its own substitute for evidence in the form of judicial notice, from that we have to conclude that the opposer utterly failed to carry any burden. At least as far as inherent distinctiveness is concerned, both prima facie and ultimate. Yes, Your Honor. But if judicial notice is taken, and the very function of judicial notice taking is to substitute for submission of evidence, then the fact that the board came up with this evidentiary substitute on its own, in effect, relieves the opposer of any burden to put in evidence, because no evidence is needed, because the judicial notice supplants the need for evidence. Well, and perhaps this is a fine point, Your Honor. But what that is doing is it's conflating the fact that the evidence comes in with the fact that the evidence carries the burden. In other words, it's not just that the evidence is admissible and being considered by the court. But now we're also, and because the court is admitting it, it would be hard to understand why it would not do so. It's being accepted as having met that burden. It's being accepted as having proven that the design of the foundation does not stand out. That's a very different argument. If you're saying that the judicial notice, even if proper, was deficient in content, that's very different from saying you were victimized by an improper imposition on you of a burden that shouldn't have been on you. Well, we're saying both, Your Honor. All right, let's hear from the other side and see if we can proceed from there. Good afternoon, Your Honors. With respect to the question of whether the case should be reversed so that the trademark trial and appeal board can review the question of judicial notice, I would point out that Rule 201 requires that a party who opposes judicial notice have an opportunity to be heard upon timely request. And the request may be made after judicial notice has been taken. That's subpart E of Rule 201. I would also note that the foundation's that is he should have complained immediately on seeing the board's decision, but he didn't? Yes, and he could have sought re-hearing. And according to this rule, if that was the basis for the decision, they should have granted that re-hearing. I would also, just to clarify for sure, Father Claude Diaz did not testify at all in this proceeding. The only evidence that is being argued about has to do with him, what his actions were many years ago when the habit was first being adopted and conceived through him, and what he taught to the people who were ultimately permitted to wear the habit. These are the types of things that come in with respect to Father Claude Diaz. I submit to the extent that, first of all, I don't think they ever came in to the board's decision on the question of inherent distinctiveness. To the extent that they were considered, they were not considered for the truth of the matter, but only for the teachings of what Father Claude Diaz taught when these people went to Brazil to receive their training, and what they took away from that understanding to be the meaning and the symbolism of the habit. So there's no hearsay problem? Is that what you're saying? There's no hearsay problem because he isn't an absent testifier. People are testifying about him. He's not testifying though absent. Correct. With respect to Father Schmieder's testimony and the board's excluding it. Can I ask you a practical question here? Yes. The opposing counsel argues that you don't need to worry because even if he gets trademark registration, your use of the habit in various ways in the nature of religious ceremonies won't be impeded because he says that's not even a trademark use, so the trademark would be irrelevant to your right and ability to go ahead and do that. How about if we turn it the other way around? What is the harm to you if he has a registration? I believe it does. Will it prevent you from doing what you think you should be allowed to do? Part of the evidence before the board that is recited in the board's order is that Mary Queen, true Mary Queen, the heralds of the gospel have appeared on nationwide television, for example, in musical ensembles celebrating their religious commitment and their religious ideals and tenets. It seems to me that these are very public, certainly broadcast nationwide, and could be subject to an injunction. I would not want to trust it to a district court judge to make a ruling on this issue because we have had this proceeding in which we oppose the registration, and indeed the registration was granted over our opposition. I think we would be very susceptible to an injunction and certainly to a great deal of- So the distinction here is between a private religious ceremony and a public performance of religious music. You're saying you agree with him and that in the former circumstance, you have nothing to fear, but in the latter circumstance, you think you might have something to fear. I will only say we have appeared nationally, so I would not say our appearances are or will be or should be limited to private religious celebrations. I would note- But what you're worried about is if the heralds are once again performing religious music on television, if he gets the registration, he might run to a district court and try to get, maybe actually get, an injunction to preclude that television performance? That is my fear. There is a great deal of history here, and it runs through a number of countries. And it's certainly not relevant to this board except to note that there are deep-felt emotions with respect to this particular trademark or garment or habit. I don't really think it's a trademark, but that's- I misspoke when I said that. And I think that whenever a legal edge is given, such as the right to register, there is a danger that that right will be used and possibly abused. And I think we would definitely be hurt in the event that the mark is registered. Has Mary Queen ever taken the position that the foundation can't use the habit? No. Publicly? We have not taken that position. No, I'm sorry. Let me rephrase your question. Have you ever opposed their using, in public, the habit? Not to my knowledge. In connection with their service? Not to my knowledge. Let me make sure I understand the burden of proof issues here. If I understand correctly, where the issue is one of inherent distinctiveness, the ultimate burden is on the opposer, is that correct? As opposed to acquired distinctiveness? No. I don't think the ultimate burden is on the opposer. I think the burden of coming forward with a prima facie case is on the opposer. I think that if under the overall analysis, the mark does not have inherent distinctiveness, it should not be registered. And I think it's always the ultimate burden of the applicant to prove the requirements for registrability. No, he's not the applicant anymore. He obtained the registration, and then it was published for. Well, this is not a cancellation. This is an opposition. I beg your pardon. He has not obtained. We're simply trying to correct the mistake made by the trademark examiner. And the board has made that correction. With respect to Father Schmieder's deposition, I do believe, based on the questions I heard posed to Mr. Weinstein, that the issue is well understood. We're not saying that the federal rules apply in all instances. I do understand that the regulation promulgated in section 1.102J2 of 35 CFR is somewhat different. I do have to make. What was the nature of Father Schmieder's testimony? What was the nature of Father Schmieder's testimony? It was a very wide ranging deposition covering a myriad of things. As to the specific question of inherent distinctiveness, I don't think there's anything there. However, if the case should be remanded, I would absolutely want Father Schmieder's testimony to present to the board in any re-hearing before the board. Now, opposing counsel argued that there was no basis on which the board could have made any kind of comparison with regard to distinctiveness between the habit at issue and other habits of a generally similar sort. My recollection is that there were all kind of diagrams or photographs of a variety of habits. And Mr. Weinstein, if I understood him, said no, that's not right. There were a couple of pictures of people only in this habit, not in other habits. So therefore, the board would have no foundation for drawing any conclusions about whether there was inherent distinctiveness in the habit in question. Well, I think when we talk of photographs, we are referring to the specimens that the foundation submitted to show its use of the habit in order to support the registration. Those photographs are black and white photocopies that are rather difficult to see. And there are a couple that show the habit being used by, for example, a priest following a couple of members of the foundation who are wearing the habit that's at issue here. There is another photograph, and the clear photograph of this, which I don't believe is before the court, does show the cleric wearing his habit. And I believe there are others also, but I don't think they're visible in this photograph. Were there comparative habits before the board or not? Yes or no? No, there were not. So you agree with him on it? That there were no comparative habits before the board? Yes. Yes, I do agree. What do we look to to determine that this particular habit, setting aside the fact that there are habits out there, and we all know that, but that this particular habit was not inherently distinctive? Well, the factors are set forth in the Seabrook. The evidence in this case, not the general approach to the legal problem. Let me try to help bring this point down to a fine point. It struck me that the board's opinion was, in some areas, had a kind of breezy aspect. For example, they say, the habit at issue does not strike us as so unique, unusual, or unexpected that one may assume without proof that it will automatically be perceived by others as a trademark or service mark. That striking us, what's the evidence to that effect? Well, the board was going by a couple of things. One of them is this court's opinion in Tone Brothers versus Cisco Corporation, a 1994 case, in which it was said, the focus of the inquiry is to inherently think of it. The answer has to be factual. You're giving us legal abstractions. That's not responsive. I want to know what you would point to. I want to say, three pieces of evidence in this case that say that this particular habit is not distinctive compared to all other habits. How do I know that's true? I think judicial notice. Judicial notice will tell me that there are habits out there. Does judicial notice tell me about this particular habit? It tells you that this particular habit is, like others in that it has a cross. In that, its wearers have a rosary around the waist. As we look at this habit, that's all there is. Tell me that that cross design, which looks perhaps not like any ordinary cross, that that cross design is not distinctive? I think there is an analogy that can be drawn here. Consider football uniforms. They're all different. They're distinctive. You see a jersey, you can tell whether it's a Washington Redskin or a Minnesota Viking. And yet, is any one of them, does it as representing a source of a good or a service? No, it's a football jersey. It's worn by a football player. The same is the case in this instance. A habit is worn. We see them. I see them. It's a football jersey, but it's a very particular source, i.e. the Baltimore Ravens. And they value that mark very highly. I mean, I'm not sure how helpful that example is to you. It seems to me that that sort of proves the point. I mean, Corvette values its design as a trade dress very highly, even though there are many cars out there. Your answer to that is that's acquired distinctiveness. That's acquired distinctiveness. You're absolutely right. And the point I'm really trying to make, I referred to some NFL teams where we do have acquired distinctiveness. But if someone walks in this room wearing a football jersey, even if it's highly distinctive, it's still a football jersey. And if it isn't an NFL team, if it's a high school team from Wasilla, Alaska, you're not going to know it. All you know is it's a very nice, very looking, very bright football jersey. And that's what we have with respect to the habits. But you had something in front of you which seemed to be the trademark registration. This is part of the trademark application. What page of the pen? I don't know. It's reprinted on page two of the court's opinion, the board's opinion, I think. Isn't that the entire drawing? I think it probably is. I'm sorry, Your Honor, I do not. Yes, it's shown on page two of the record. The one I have is a little bit larger. That was why I was showing it. And this came out of the application. Can I ask another irrelevant practical question? Yes, Your Honor. Have there been any discussions between the principals here or the counsel for the principals about resolving the potential threats or unhappiness or antagonism, whatever the right word may be, between these parties? There have been efforts made on various occasions. I think both parties probably negotiate in good faith, but we were unable to resolve. Did those efforts include during dependency in this court of this appeal? Your call? Did we discuss it? They did, Your Honor. I think my time is nearly up. If there are other questions, I'd like to address them otherwise. All right. Thank you. We'll hear some rebuttal from Mr. Weinstein. Let me consult you for just one moment to confer with my co-counsel. All right. This is usually the wrong court. Any court is the wrong court. First Amendment case. So a few minutes, three minutes, four minutes? You've got four minutes here, but I'm probably not entitled to that. Three would probably be fine, Your Honor. Just two very brief points. The first was regarding a federal rule of evidence 201 and regarding the opportunity, as my learned adversary would put it, for me to be heard regarding the issue of taking a judicial notice. The problem is with regard to this particular case is twofold. First, that the final decision had already issued by the time I had any notice of the judicial notice. Well, no, he admitted that, but he said you could have asked for reconsideration. Is that not true? But I could have also asked for appeal at that point, Your Honor, and that's precisely what we did. But the point was that the rule also contemplates that when judicial notice is about to be taken, that the tribunal will announce that that's going to happen so that we can have a chance to address what it is that judicial notice is being taken of. And we had no opportunity to do that, nor could we have, Your Honor, because the way that the board conducts its proceedings, there are testimony periods, which perhaps the board could have reopened for us, but at that point was closed and without such an unusual thing happening, we would not have had that opportunity. I think that about covers it. All right, we thank you both. We'll take the appeal under advisory.